UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MARGIE L.,

        Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

        Defendant.

No. CV 19-1022-PLA

**MEMORANDUM OPINION AND ORDER**

## I.

## PROCEEDINGS

Margie L.[1] ("plaintiff") filed this action on February 11, 2019, seeking review of the Commissioner's[2] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on March 4, 2019, and March 11, 2019. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on December 16, 2019, that addresses their positions concerning the disputed issue in the case.

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1963. [Administrative Record ("AR") at 439.] She has past relevant work experience as a home care provider; as a housekeeper; as a caregiver; and as a cleaner, medical services. [Id. at 26.]

On November 20, 2014, plaintiff protectively filed an application for a period of disability and DIB alleging that she has been unable to work since January 27, 2014. [Id. at 17; see also id. at 439-40.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 377-78.] A hearing was held on September 20, 2017, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 271-300.] A medical expert ("ME") and a vocational expert ("VE") also testified. [Id. at 275-82, 291-99.] On January 9, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from January 27, 2014, the alleged onset date, through June 30, 2014, the date last insured. [Id. at 17-27.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 437-38.] When the Appeals Council denied plaintiff's request for review on December 27, 2018 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means

2

only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

B.  **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from January 27, 2014, the alleged onset date, through June 30, 2014, her date last insured. [AR at 19.] At step two, the ALJ concluded that through the date last insured, plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; and carpal tunnel syndrome of the right wrist, status-post carpal tunnel release surgery. [Id.] At step three,

the ALJ determined that through the date last insured, plaintiff did not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 22.] The ALJ further found that through the date last insured, plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b):[4]

> [I]ncluding lifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to 6 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday, with the following restrictions: she can only occasionally perform postural activities; she must avoid ladders, unprotected heights and moving machinery.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that through her date last insured, plaintiff was able to perform her past relevant work as a housekeeper. [Id. at 26, 295-96.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 27, 2014, through June 30, 2014, the date last insured. [Id. at 27.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she failed to properly consider plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## A.   LEGAL STANDARD

Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[5] 16-3p went into effect. See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[6] SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *2. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to

---

[5] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[6] SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016." See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Other than also updating "citations to reflect [other] revised regulations that became effective on March 27, 2017," the Administration stated that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." Id. The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent. Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required"). Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996); SSR 16-3p, 2017 WL 5180304, at *4 (the Commisisoner "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina

v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

### B. THE ALJ'S DECISION

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4-7.] Specifically, she argues that the ALJ offered insufficient specific, clear and convincing reasons for finding that plaintiff's testimony was not consistent with the medical record. [Id. at 7.] She also submits that the Commissioner's regulations "prohibit rejecting subjective pain testimony solely on the basis of objective medical evidence," which is the only reason given by the ALJ in her decision. [Id. at 8 (citations omitted).] The Court agrees.

First, the ALJ summarized plaintiff's testimony as follows:

> In connection with [plaintiff's] application for disability insurance benefits, [she] alleged an inability to engage in competitive employment due to a lower back injury causing back pain radiating down her leg, carpal tunnel syndrome, hip pain and right knee pain. ... In a Function Report, [plaintiff] indicated that she is "always in pain", that she has carpal tunnel syndrome affecting the use of her hands, as well as a back injury. She reported that she needs help dressing herself, bathing herself, and that she has difficulty grooming herself due to difficulty reaching and holding on to small items. She reported that she is able to prepare simple meals, and she can do some household chores. She is able to leave her house and drive a car, she is able to attend doctor's appointments and go grocery shopping and handle her own finances. She estimated that she could lift no more than ten

pounds depending on her pain.

[AR at 23 (citing id. at 451-58).] Next, the ALJ stated that plaintiff's statements "concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." [Id. at 23.] The ALJ then summarized various medical records regarding plaintiff's back pain and carpal tunnel syndrome dated between November 2013 and June 2014 as discussed in more detail below. [Id. at 23-24.] Finally, she discounted plaintiff's subjective symptom testimony as follows:

> Ultimately, after considering the objective medical evidence regarding all of [plaintiff's] physical conditions on or before June 30, 2014, the undersigned finds that the clinical findings simply fail to support the alleged severity of symptoms and degree of limitation. Weighing all the relevant factors, the undersigned concludes that the objective medical evidence on or before June 30, 2014, simply does not warrant any additional limitations beyond those established in the residual functional capacity contained herein.

[Id. at 24.]

## C. OBJECTIVE EVIDENCE

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in [her] credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult"). "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. . . . These findings may be consistent with an individual's statements about symptoms and their functional effects. However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain or other symptoms than test results and statements that are consistent with other evidence in the record."

SSR 16-3p, 2017 WL 5180304, at *5. As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, after finding that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" [AR at 23], the ALJ generally summarized the medical evidence she relied on to support that finding. [Id. at 23-24.] For instance, she noted that plaintiff was seen on December 22, 2013, by U.S. HealthWorks Medical Group, where she presented with complaints of "acute onset of lower back pain that occurred while she was at work" making a bed, in her position as a housekeeper at the Hyatt Regency. [Id. (citing id. at 565-68).] The ALJ stated that the treating provider reported that plaintiff had an antalgic gait; her posture appeared "uncomfortable"; she exhibited spasms of the paravertebral musculature and restricted range of motion of the lumber spine; her heel-toe ambulation was normal; her sensation was intact; and her straight leg raising test was negative although with "some increased lower back pain." [Id. (citing id. at 565).] An x-ray showed minimal spur formation, but no fractures, subluxation, spondylosis, or spondylolisthesis. [Id. (citing id. at 570).] Plaintiff was authorized to return to modified work with restrictions on climbing, changing positions, overhead work, stooping, bending, kneeling, squatting, and lifting over 10 pounds. [Id. (citing id. at 568).]

The ALJ also discussed plaintiff's December 2, 2013, visit to physical medicine specialist Mohammed Amjad Ali Khan M.D., complaining of back pain. [Id. (citing 637-44).] At that time (which was a few weeks prior to the incident at the Hyatt Regency), Dr. Khan noted tenderness in plaintiff's lumbar spine and negative straight leg raising tests. [Id. (citing id. at 642-43).] Not mentioned by the ALJ, Dr. Khan also noted that plaintiff's spinal range of motion was limited with

pain and she exhibited positive myofascial trigger points; the ALJ also did not mention that Dr. Khan discussed conservative as well as interventional treatment options, such as epidural injections, and that he ordered an MRI of plaintiff's lumbar spine.[7] [Id. at 642-43.]

The ALJ next discussed the January 2014 records of George Blankinship, M.D., "a physical medicine specialist . . . who prescribed Ibuprofen and prednisone." [Id. at 23 (citing id. at 670-71).] As noted by the ALJ, on January 9, 2014, Dr. Blankinship's examination found plaintiff had a decreased range of motion and positive straight leg raising, and recommended that she undergo a lumbar spine MRI. [Id. (citing id. at 670).] The January 18, 2014, MRI revealed mild discogenic disease at L4-L5, with moderate central canal stenosis and lateral recess narrowing; mild discogenic disease at L5-S1 with mild central canal stenosis and lateral recess narrowing; and multilevel bilateral foraminal narrowing most pronounced at L4-S1. [Id. (citing id. at 705-06).] On January 30, 2014, Dr. Blankinship recommended that plaintiff undergo a lumbar epidural steroid injection and physical therapy [id. at 23-24 (citing id. at 735-43)], and in February 2014, she received the injection. [Id. at 24 (citing id. at 761-62).] The ALJ noted -- without further explanation -- that when plaintiff saw her primary care physician on May 23, 2014, plaintiff did not complain of back pain.[8] [Id. (citing id. at 815-21).]

The ALJ similarly found that the objective medical evidence regarding plaintiff's right wrist condition "is not consistent with [plaintiff's] extreme allegations." [Id. (citing id. at 623).] The ALJ noted a November 2013 abnormal nerve conduction study that reflected "moderate to severe carpal tunnel syndrome and positive Tinel's and Phalen's signs"; she also noted that plaintiff

---

[7] Although the ALJ further noted that there was no improvement in plaintiff's symptoms by January 2014 but that her "clinical presentation appeared to have improved" [AR at 23], the ALJ's citation to pages 3 and 4 of Exhibit 5F [AR at 610-11] relates to plaintiff's treatment for carpal tunnel and does not mention her back issues, let alone reflect an improvement in plaintiff's "clinical presentation."

[8] To the extent the ALJ was insinuating that plaintiff's failure to discuss her back pain with her primary care physician was a reason to discount plaintiff's testimony, the Court disagrees. Plaintiff had physical medicine specialists who were treating her for her back pain; on May 23, 2014, she saw her primary care physician due to complaints of fatigue, dizziness, and sinus congestion. [AR at 815.]

underwent right carpal tunnel release surgery on January 29, 2014. [Id. (citing id. at 120-22).] The ALJ observed that on June 27, 2014, five months after plaintiff's surgery, an MRI of plaintiff's right wrist "showed findings suggestive of carpal tunnel syndrome, a tear in the triangular fibro-cartilage with mild synovitis, and 'tiny' bone cysts." [Id. (citing id. at 587-91).] She did not provide any explanation as to how these records were purportedly inconsistent with plaintiff's subjective symptom testimony.

Finally, after reviewing the objective evidence regarding plaintiff's physical conditions on or before June 30, 2014, the ALJ concluded that "the clinical findings simply fail to support the alleged severity of symptoms and degree of limitation." [Id.]

Thus, the ALJ (1) found that plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record" [id. at 23]; (2) generally summarized the medical evidence relating to plaintiff's back pain and carpal tunnel syndrome as discussed above [id. at 23-24]; and (3) stated her conclusion that "the clinical findings simply fail" to support the alleged severity of plaintiff's symptoms and limitations.

As discussed above, the "ALJ must identify the testimony that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints.'" Treichler, 775 F.3d at 1103 (citation omitted) (emphasis added); Brown-Hunter, 806 F.3d at 493. Here, other than her general discussion of the medical evidence, the ALJ did not identify the testimony she was discounting and "link that testimony to the particular parts of the record" supporting her determination. Brown-Hunter, 806 F.3d at 494. Indeed, the ALJ's running narrative regarding plaintiff's medical records, while relevant, did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out her RFC and summarized the evidence supporting her determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that

testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138). In fact, a great deal of the above-cited evidence arguably lends support to plaintiff's subjective symptom allegations during the time period in question.

In short, the ALJ's finding that plaintiff's subjective symptom allegations were not supported by the objective medical evidence was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony. Even assuming this was a specific, clear and convincing reason, the ALJ's determination to discount plaintiff's testimony for this reason rises or falls with any other grounds given by the ALJ for discrediting plaintiff's allegations. Here, because this was the *only* reason given by the ALJ for discounting plaintiff's testimony, remand is warranted.

### D. OTHER REASONS FOR DISCOUNTING PLAINTIFF'S TESTIMONY

Plaintiff argues that in discounting plaintiff's subjective symptom testimony, the ALJ only relied on the fact that plaintiff's testimony was not supported by the objective medical evidence. [JS at 8, 10.] Defendant responds that the ALJ "noted that Plaintiff's conservative treatment regimen was inconsistent with her allegations of extreme symptoms, as was her reported daily activities." [Id. at 13 (citing AR at 23-24).]

"Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

As discussed below, the Court determines that the ALJ did not rely on these grounds for discounting plaintiff's testimony and, even if she did, she did not provide reasons that were specific, clear and convincing, and supported by substantial evidence.

/
/

### 1. Conservative Treatment

Defendant argues that the ALJ discounted plaintiff's testimony because her "conservative treatment regimen was inconsistent with her allegations of extreme symptoms." [JS at 13 (citing AR at 23-24).] The Court has scoured the ALJ's decision, however, and finds no such "specific, clear and convincing" reason set forth by the ALJ. Although the ALJ mentioned that Dr. Blankinship had prescribed Ibuprofen and prednisone to treat plaintiff's back condition, she did not state that such treatment was conservative and, even if she had so stated, she did not in any way attempt to tie that observation into a reason to discount plaintiff's testimony. Indeed, the ALJ also noted that Dr. Blankinship had recommended that plaintiff receive a lumbar epidural steroid injection -- which she did. There is also evidence in the record that for some period of time during the relevant period, and while she was treating with Dr. Blankinship, plaintiff was prescribed Norco -- an opioid narcotic pain medication. [See, e.g., AR at 735 (January 30, 2014, treatment note), 816 (May 23, 2014, treatment note).]

Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be "conservative" treatment. See, e.g., Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications."); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize treatment with narcotics, steroid injections, trigger point injections, and epidural injections as conservative); see also Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [a prescribed narcotic] is 'conservative' or in conflict with Plaintiff's pain testimony").

In any event, the Court finds that ALJ did not rely on plaintiff's purportedly "conservative" treatment to discount plaintiff's subjective symptom testimony. And, even if she did, in light of the entire record she did not provide reasons that were specific, clear and convincing, and supported

by substantial evidence.

### 2. Daily Activities

Defendant also argues that the ALJ discounted plaintiff's testimony because her "reported daily activities" were "inconsistent with her allegations of extreme symptoms." [JS at 13 (citing AR at 23-24).] Again, after reviewing the ALJ's decision, the Court does not find this to be a reason given by the ALJ to discredit plaintiff's testimony. The only mentions of plaintiff's daily activities made by the ALJ were included as part of the ALJ's summary of plaintiff's subjective symptoms as presented by plaintiff in her Adult Function Report and also as provided by her son, Joe Lopez, in a Third-Party Function Report:

> [Plaintiff] reported that she needs help dressing herself, bathing herself, and that she has difficulty grooming herself due to difficulty reaching and holding on to small items. She reported that she is able to prepare simple meals, and she can do some household chores. She is able to leave her house and drive a car, she is able to attend doctor's appointments and go grocery shopping and handle her own finances.
>
> . . . .
>
> Mr. Lopez reported that [plaintiff] has some difficulty performing activities of personal care. . . . However, he reported that she makes simple meals, and is able to do "some basic" household chores. Mr. Lopez reported that [plaintiff] goes outside to attend doctor's appointments, and go to the grocery store. She is able to handle her finances. [He] further reported that she can only walk for 15 minutes before she must rest.

[AR at 23-24 (citing id. at 473-81, 503-11).] Other than these cursory mentions of plaintiff's activities, the ALJ did not in any way clearly state (or even obliquely suggest) that she was discounting plaintiff's allegations as inconsistent with her daily activities. Neither did she attempt to explain how plaintiff's daily activities were inconsistent with her symptom allegations.[9]

---

[9] With respect to Mr. Lopez' report, the ALJ simply stated that his allegations "do not establish that [plaintiff] is disabled," and discounted his lay witness observations because "he is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the allegations is questionable." [AR at 24.] She also questioned his allegations because, as plaintiff's son, "he cannot be considered a disinterested third party witness whose allegations would not tend to be colored by affection for [plaintiff] and a natural tendency to agree (continued...)

The Court finds that ALJ did not in any way rely on plaintiff's daily activities to discount plaintiff's subjective symptom testimony. And, even if she did, in light of the entire record, she did not provide reasons that were specific, clear and convincing, and supported by substantial evidence.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any

---

[9](...continued)
with the symptoms and limitations [she] alleges." [Id. at 24-25.] Finally, she noted that his allegations were "simply not consistent" with the evidence. [Id. at 25.]

None of these reasons for disregarding Mr. Lopez' testimony was a valid reason "germane" to the witness. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). First, plaintiff's personal relationship with the lay witness is not a valid reason to discount his observations. Diedrich v. Berryhill, 847 F.3d 634, 640 (9th Cir. 2017); see also Smolen, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)). Second, lay witnesses are not required to have medical training, or to provide exact details of their observations. That is what makes them "lay" witnesses. See Diedrich, 874 F.3d at 640. Finally, a lack of support from the "overall medical evidence" is also not a proper basis for disregarding a lay witness' observations. Diedrich, 847 F.3d at 640 (citation omitted) ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record."). The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone "is precisely why such evidence is valuable at a hearing." Id. (citing Smolen, 80 F.3d at 1289 (holding that ALJ erred where the ALJ rejected the testimony of claimant's family members about claimant's symptoms because the medical records did not corroborate those symptoms)).

confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Then, in light of the ALJ's reevaluation of plaintiff's subjective symptom testimony and the medical and other evidence of record, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a housekeeper as generally performed.[10] If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/
/
/
/
/
/
/
/
/
/

---

[10] Nothing herein is intended to disrupt the ALJ's step four findings that plaintiff is unable to perform her past relevant work as a home care provider, as a caregiver, or as a cleaner, medical services, or that she is unable to perform the housekeeper work at a level greater than light work. [AR at 26.]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 19, 2019

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE